## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **FLASH DNL, LLC,**<br><br>    Plaintiff,<br><br>v.<br><br>**CARDAS AUDIO, LTD.,**<br><br>    Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S ORIGINAL COMPLAINT

1. Flash DNL, LLC for its Complaint against Cardas Audio, LTD., ("Cardas"), alleges, based on its own knowledge with respect to its own actions and based upon information and belief with respect to all other actions, as follows:

### THE PARTIES

2. Flash DNL, LLC (hereinafter "Plaintiff") is a Texas limited liability company.

3. Plaintiff, as to the false marking claim, represents the United States and the public, including Defendant's existing and future competitors.

4. On information and belief, Defendant Cardas is an Oregon corporation, with its principal place of business at 480 11th Street, Bandon, OR 97411.  Defendant Cardas' registered agent is Steve Wilgers, located at 243 W. Commercial Ave, P.O. Box 29, Coos Bay, OR 97420.

5. Defendant regularly conducts and transacts business in Texas, throughout the United States, and within the Eastern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

### JURISDICTION AND VENUE

6. The federal claim pleaded herein arises under 35 U.S.C. §292(b).

7. Subject matter jurisdiction for this federal claim is conferred upon this Court by 28 U.S.C. §1338(a).

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b)-(c) and 1395(a), because: (i) Defendant's products that are the subject matter of this cause of action are advertised, marked, offered for sale, and/or sold in various retail stores and/or on the Internet in this District; (ii) a substantial part of the events or omissions giving rise to the claim occurred in this District; and (iii) Defendant is subject to personal jurisdiction in this District, as described above.

9. Plaintiff brings this action under 35 U.S.C. § 292(b), which provides that any person may sue for civil monetary penalties for false patent marking.

## BACKGROUND

10. This is an action for false patent marking under Title 35, Section 292, of the United States Code related to the Golden Section Stranding and Constant Q Stranding technologies used in products branded and/or distributed by Defendant.

11. The purpose of this lawsuit is to act in the public interest to enforce the policy underlying the false marking statute, 35 U.S.C. §292.

12. Defendant has and continues (and/or has and continues to cause others) to mark upon, affix to, and/or use in advertising U.S. Patent Nos. 4,980,517 and 4,628,151, which have expired, thus violating 35 U.S.C. § 292(a) by marking upon unpatented articles with the purpose of deceiving the public. More specifically, Defendant, with the purpose of deceiving the public, makes, sells and/or advertises or has made, sold and/or advertised the following products with patent numbers that have expired:  many of Defendant's products utilizing the Golden Section Stranding and Constant Q Stranding technologies, including Defendants' "Clear" product line,

which was not even released until after the '151 Patent had expired, and which continues to be marked with both of the expired patents.

13. Defendant used packaging and/or advertising in connection with unpatented products that bear the word "patent" and/or any word or number importing that the products are patented.

14. The marking and false marking statutes exist to give the public notice of patent rights. Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.  Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain.

15. False patent marking is a serious problem.  Acts of false marking deter innovation and stifle competition in the marketplace. If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market.  False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement.  False marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.  Furthermore, false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.  In each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable.  Failure to take on the costs of a

reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.  False markings may also create a misleading impression that the falsely marked product is technologically superior to previously available ones, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

16. The false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.

17. Flash DNL, LLC, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of Defendant's violations of 35 U.S.C. § 292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

18. Defendant did not have, and could not have had, a reasonable belief that its products were properly marked.

19. Defendant has, or regularly retains, legal counsel to prosecute the patents that it now owns.

20. Defendant clearly has experience applying for patents and obtaining patents, and boasts about it on its website and in at least one ad.

21. Defendant knows that a patent expires and that an expired patent cannot protect any product.

22. Each false marking on the products identified in this Complaint is likely to, or at least has the potential to, discourage or deter persons and companies from commercializing competing products.

23. Defendant's false marking of the products has wrongfully quelled competition with respect to such products thereby causing harm to Plaintiff, the United States, and the public.

24. Defendant has wrongfully and illegally advertised patent monopolies which it does not possess and, as a result, has benefited by maintaining a substantial market share with respect to the products referenced in this Complaint.

25. Defendant marked, affixed, and used in advertising at least the products identified herein with the following expired patents: United States Patent No. 4,628,151 ("the '151 Patent"); and 4,980,517 ("the '517 Patent"). Copies of the '151 and '517 Patents are attached as Exhibits A and B.

26. The '151 Patent, titled "Multi-strand conductor cable having its strands sized according to the golden section," was issued by the United States Patent Office on December 9, 1986, and expired, at the latest, on December 30, 2005.

27. The '517 Patent, title "Multi-strand electrical cable," was issued by the United States Patent Office on December 25, 1990, and expired, at the latest, on September 25, 2009.

28. Any products or methods once covered by the claims of the '151 and '517 Patents are no longer protected by the patent laws of the United States. When the patents expired, their formerly protected property entered the public domain. When a patent expires, all monopoly rights in the patent terminate irrevocably and, therefore, a product marked with an expired patent is not "patented" by such expired patent.

29. Defendant knew that the '151 Patent expired in 2005, and that the '517 Patent expired in 2009. Defendant was founded by the named inventor of the '151 Patent, the inventor has acted as Defendant's CEO, and the inventor continues to act as Defendant's agent, including in the course of advertising Defendant's products that are marked with the '151 and '517 Patents. Defendant continues to be managed, at least in part, at the direction of the inventor and the

inventor's family.  It is believe that the inventor was informed, at or about the time that he applied for and obtained the '151 and '517 Patents, that the patents would expire in approximately 20 years from the dates on which he applied for them, and that he retained that knowledge when acting as the Defendant's agent at the times that these patents expired. Moreover, it is believed that the Defendant, or the inventor for the benefit of the Defendant, directly paid the 12-year maintenance fees for the '151 and '517 Patents, and it was known when the 12-year maintenance fees for these patents were paid that the patents would expire no later than 8 years later.  *See* Exhibits C and D.

30.     Despite the fact that the claims of the patents are no longer afforded patent protection, Defendant marked, affixed to, and used in advertising at least its Cardas Audio "Golden Section Stranding" and "Constant Q Stranding" cables with the '151 and '517 Patents following their expiration dates.  Defendant marked the '151 and '517 Patents on its "Clear" product line, which was introduced after the '151 Patent had expired, and which continues to be marked with both of the expired patents.

31.     Upon information and belief, the Defendant advertised its products using the '151 and '517 Patents, after those patents expired, knowing those patents expired, and with the intent to deceive others into believing that those patents were enforceable.

32.     For example, an advertisement containing scanned images of the '151 and '517 Patents appeared in the December 2010 issue of Stereophile magazine.  The ad prominently displays the title pages of three patents for which George Cardas is the named inventor: the long-since expired '151 and '517 Patents and a third patent, U.S. Pat. No. 7,674,973, which did not issue until March 9, 2010, after both the '517 and '151 patents had expired.  *See* Exhibit E. Upon information and belief, when the Defendant approved this ad, it knew that the '151 and '517 Patents had already expired and included them in the ad anyway.

33. Also, the Defendant's website (located at http://www.cardas.com) has been updated numerous times, at least as recently as March 9, 2010, which was over four years after the '151 Patent expired (*See* Exhibit F, which announces issuance of US Patent 7,674,973. This patent was issued on 3/9/10.). Yet, upon information and belief, the Defendant knowingly decided to leave references to the '151 and '517 Patents on its website after it knew that those patents had expired, as evidenced by the following:

  a. Despite its updating of its website, Defendant's "Golden Section Stereo Magic" webpage continues to state that "Cardas *holds* the patent, U.S. Patent Number 4,628,151" and "Cardas *has* a second U.S. Patent, U.S. Patent Number 4,980,517." (emphasis added) *See* Exhibit G.

  b. Despite its updating of its website, Defendant's "Guarantee" webpage states "[t]his portion of the cable package insert guarantees you have purchased genuine Cardas cables . . . Patent Numbers 4,628,151 and 4,980,517." *See* Exhibit H.

  c. Despite its updating of its website, Defendant's "Why Cardas?" webpage states, "George Cardas received U.S. Patent Number 4,628,151 . . ." and "George Cardas *holds* the patent, "U.S. Patent Number 4,628,151 . . . ." (emphasis added) *See* Exhibit I.

34. Despite the fact that the '151 and '517 Patents have expired, Defendant is marking at least some of its "Clear" products with said patent numbers. *See* Exhibit E. Notably, Cardas's "Clear" products were not even introduced until after the '151 Patent had expired. Consequently, there was never any legitimate reason for Defendant to mark its "Clear" products with the '151 Patent.

35. In addition, Defendant has marked some of its products with patent numbers when those products do not even utilize the technologies covered by said patents. For example, the Defendant knowingly decided to mark its 1/4" to 1/8" headphone mini-plug adapter with the

'517 Patent despite the fact that it knew that this product was not covered by any of the claims of those patents, as shown by the Defendant's own description of the technology claimed in the '517 Patent as published on its website. *See* Exhibits J and K.

36. Because all monopoly rights in the '151 and '517 Patents have terminated, Defendant cannot have any reasonable belief that the products are patented or protected by the patents.

37. Defendant intended to deceive the public by marking, affixing to, and using in advertising the products with said patents. Despite the patents being expired, the Defendant's website and magazine advertisements continue to bear the patent numbers prominently in their content. Defendant knew that the products were not covered by the patents when they were marked and used in advertising.

38. Therefore, Defendant intentionally deceived the public by labeling and/or using in advertising the products with the said patents.

## COUNT I
**(False Marking with Expired and/or Unrelated Patents)**

39. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

40. Defendant falsely marked, affixed to, and used in advertising the products with the '151 and '517 Patents, which have expired.

41. Defendant knew or reasonably should have known that marking, affixing to, and using in advertising the products with the said patents was in violation of 35 U.S.C. § 292, which only authorized marking on "patented" article.

42. Defendant intended to deceive the public by marking the products and advertising materials with the said patents and using said patents in advertising materials available to the general public.

## DAMAGES

43. Flash DNL, LLC, on its own behalf and on behalf of the United States, seeks an award of monetary damages of not more than $500 for each of Defendant's violations of 35 U.S.C. § 292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## JURY DEMAND

44. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

45. Plaintiff requests that the Court, pursuant to 35 U.S.C. § 292:

46. Enter judgment against Defendant and in favor of Plaintiff for the violations alleged in this Complaint;

47. Order Defendant to pay a civil monetary fine of $500 per false marking "offense," one-half of which shall be paid to the United States and one-half of which shall be paid to Plaintiff;

48. Enter a judgment and order requiring Defendant to pay Plaintiff's prejudgment and post-judgment interest on the damages awarded;

49. Order Defendant to pay Plaintiff's costs and attorney fees; and

50. Grant Plaintiff such other and further relief as it may deem just and equitable.

Respectfully Submitted,

_____
Scott E. Stevens

        Texas State Bar No. 00792024
Gregory P. Love
Texas State Bar No. 24013060
Kyle J. Nelson
Texas State Bar No. 24056031
Stevens Love
P.O. Box 3427
Longview, Texas  75606
Telephone: 903-753-6760
Facsimile: 903-753-6761
scott@stevenslove.com
greg@stevenslove.com
kyle@stevenslove.com

**ATTORNEYS FOR PLAINTIFF
FLASH DNL, LLC**